UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF KENTUCKY

NORTHERN DIVISION

ASHLAND

Civil Action No. 19-99-HRW

DANIEL SCOTT LEWIS,                                                         PLAINTIFF,

v.                       MEMORANDUM OPINION AND ORDER

THOMAS PERKINS, *et al.*,                                                   DEFENDANTS.

This matter is before the Court upon Defendants, Thomas Perkins, individually and in his official capacity as officer with the Grayson Police Department, Roy Ison, individually and in his official capacity as officer with the Grayson Police Department, and Kevin "Mooch" McDavid, individually and in his official capacity as Chief with the Grayson Police Department's Motion for Summary Judgment [Docket No. 34]. The matter has been fully briefed [Docket Nos. 34-1, 35 and 36]. For the reasons set forth herein, the Court finds that the Defendants are entitled to judgment as a matter of law.

I.

This case arises from Daniel Lewis' arrest for terroristic threatening and wanton endangerment. The arrest followed an incident which occurred outside Lewis' business, the TKO Vape Shop, in Grayson, Kentucky on October 16, 2018. [Amended Complaint, Docket No. 10, ¶12-13]. Lewis testified that at approximately 11:30 a.m. that day, he heard a saw being

1

operated outside the TKO Vape Shop. [Deposition of Daniel Lewis, Docket No. 34-2, 61:2-7]. He also noticed concrete dust was "covering every vehicle" in his parking lot, including his own. *Id*. at 62:16-21; 63:2-5. He saw workers outside, later identified as Cody Stamper, Michael Shane Perkins, and James Skaggs, using a saw to cut concrete on Carol Malone Boulevard. *Id.* at 62:11-15. Lewis decided to exit his shop and talk to the workers who were producing the dust. *Id.* 64:1-14. Lewis does not dispute screaming at the workers: "Can't you put some water on that damn saw?" *Id.* at 65:20; 128:8-13. When the workers did not stop sawing, he said: "So you're just going to let it go? You're not going to do a F-in thing about it?" *Id.* at 67:12-15.

Lewis does not dispute that he then "pulled" a loaded firearm from his back pocket. *Id.* at 73:4-11; 74:10- 11; 75:12-14; 97:12-16. He testified that he feared for his safety. *Id.* at 74:17-19; 81:20-21. There is conflicting testimony, however, regarding whether Lewis pointed the gun at anyone during this interaction. Lewis testified that he held the gun against his chest, barrel pointed toward the ground. *Id*. at 79:6-8.

Cody Stamper testified that Lewis was "screaming in Michael Shane Perkins' face" prior to pulling the weapon. [Deposition of Cody Stamper, Docket No. 34-6, 13:19-22; 24:23-25]. Stamper also testified that Lewis threatened to kill him. *Id.* at 15:2-3. Profanity was exchanged, Stamper telling Lewis to "shut the f---- up" and calling him a "coward." [Report of Officer Thomas Perkins, Docket No. 34-11].With regard to the position of Lewis' gun, Stamper testified that Lewis pointed the barrel end of the gun at him for approximately one second. [Docket No. 34-6, 15:8-10; 17:20-21; 22:21- 23:3].

Michael Shane Perkins testified that he "could distinctly see where the barrel of the Plaintiff's gun] was pointing" and that the firearm was pointed at Stamper. [Deposition of Michael Shane Perkins, Docket No. 34-8, 14:9-21; 16:10-25; 43:14-21. Perkins also testified

2

that Lewis told Stamper: "I will fucking kill you." *Id*. at 17:12-21. He further testified that Lewis told him that he "shoot[s] to kill." *Id.* at 17:22-18:4.

In his statement to law enforcement, James Skaggs stated that he told Lewis to "get your a—back inside" and, further, called him a " 'f---ing p----" for pulling a gun on them'." [Docket No. 34-11].

Lewis then returned to his shop. [Docket No. 34-2, 91:2-5].

Law enforcement was summoned. Officer Roy Ison was the first to arrive at the scene and was told by the construction workers that Lewis had threatened Stamper and pointed a gun at him. [Deposition of Roy Ison, Docket No. 34-3, 28:7-19]. Officer Ison then went into the shop and asked Lewis for the firearm. *Id.* at 28:20-29:3. Lewis gave it to him and Ison took the firearm to his cruiser. *Id.* 29:8-9. In his deposition, Ison described Lewis as "agitated" at first but "immediately calmed down" and was "cooperative." *Id.* at 29:4-17.

Officer Thomas Perkins arrived at the scene at approximately 12:35. [Deposition of Thomas Perkins, Docket No. 34-4, 14:20-23]. He had been informed by 911 dispatch that Lewis was "screaming and yelling" at construction workers and had "pulled a gun on them." *Id*. at 13:23-14:6. Upon arriving at the TKO Vape Shop, Officer Perkins asked the Lewis "general questions about the complaint that was given to [him] through 911 dispatch." *Id.* at 15:11-15. After speaking to the Lewis, he went outside to speak to the construction workers. *Id.* at 15:19-22. Both Officer Perkins and Officer Ison spoke to the construction workers and obtained written statements from all three of them. *Id.* at 18:21-19:5. Those statements are in the record at Docket No. 34-11.

3

Officer Perkins also took statements from Lewis, and two additional witnesses, Lewis' wife Dawnita Lewis and James Woodrow. [Docket No. 34-11]. Dawnita Lewis witnessed the incident from inside of the shop. *Id.* She told Officer Perkins that her husband kept the gun at his waist and did not point it at the constriction workers. *Id.*

In his report, Officer Perkins wrote that Woodrow, who observed the confrontation stated that Lewis did not point the gun at the construction workers. *Id.*

Officer Perkins also checked for video surveillance footage to see if there was a recording of the incident, but no footage was located. [Docket No. 34-4, 25:17-23].

Kevin McDavid was the Chief of the Grayson Police Department at the time of the incident, and he was present on the scene for part of the investigation. [Deposition of Kevin McDavid, Docket No. 34-9,10:24-11:5; 14:18-24. Officers Ison and Perkins were already at the scene when he arrived. *Id.* at 16:10-14. He testified that he advised Officer Perkins to take the witness' statements to County Attorney Brian Bayes to "see what the County Attorney wanted to do with this." *Id*. at 18:5-22. An arrest warrant was obtained. *Id.* at 18:20-22. Specifically, the warrant charged Lewis with Terroristic Threatening in the 3rd degree [1] and Wanton Endangerment in the 1st degree [2]. A copy of the electronically signed warrant is in the record at Docket No. 34-10.

---

[1] Terroristic threatening in the third degree is defined by KRS 508.078, which provides: "[A] person is guilty of terroristic threatening in the third degree when…he threatens to commit any crime likely to result in death or serious physical injury to another person or likely to result in substantial property damage to another person."
[2] Wanton endangerment in the first degree is defined by KRS 508.060, which provides: "A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person."

Officer Perkins confirmed during his deposition that he was advised by Chief McDavid to go to the County Attorney's office and ask County Attorney Brian Bayes whether a warrant should be issued. [Docket No. 34-4, 27:11-15; 40:3-11]. He did so, and subsequently prepared an affidavit and report addressing the circumstances of the incident. *Id.* at 32:4- 9.

Officer Ison served the arrest warrant on Lewis and transported him to the Grayson Police Department. [Docket No. 34-3, 34:12-19; 35:4-6]. He spent three hours at the Grayson County Detention Center and was then released. [Docket No. 34-2, 106:23-107:4]. The criminal charges against Lewis were ultimately dismissed on December 17, 2018.

## II.

The Plaintiff filed his original Complaint this action on October 9, 2019. [Docket No. 1]. An Amended Complaint was filed on December 3, 2019. [Docket No. 10. The Amended Complaint asserts claims against Thomas Perkins, Roy Ison, Kevin "Mooch" McDavid, Cody Stamper, John Stamper, John R. Stamper, Michael Shane Perkins, James Skaggs and "any unknown defendants."[3] Lewis alleges four causes of action: Count I – Unlawful Detention (pursuant to 42 U.S.C. §1983), Count II – Abuse of Process, Count III – Malicious Prosecution, and Count IV – Malicious Prosecution (pursuant to 42 U.S.C. §1983). The claims against Officers Ison and Perkins and former Chief McDavid are alleged against them in their official as well as individual capacity. Lewis also seeks attorney's fees.

Officers Ison and Perkins and former Chief McDavid seek summary judgment as to all claims alleged against them herein.

---

[3] The claims against Cody Stamper, John Stamper, John R. Stamper, Michael Shane Perkins, James Skaggs, were dismissed pursuant to Fed.R.Civ.Proc, 12(b)(6). [Docket No. 16].

## III.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Of course, [the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co. .,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Binay v. Bettendorf,* 601 F.3d 640, 646 (6th Cir.2010) (quoting *In re Calumet Farm, Inc.,* 398 F.3d 555, 558 (6th Cir.2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex,* 477 U.S. at 322–23. The non-moving party may not rest upon the

mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial.... In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource,* 576 F.3d 551, 558 (6th Cir.2009) (quoting *Everson v. Leis,* 556 F.3d 484, 496 (6th Cir.2009)).

### IV.

"Official-capacity suits ... 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.' " *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Thus, Plaintiff's claims against the Defendants in their official capacity, are against the Grayson Police Department, and, in turn, against the City of Grayson.

When a § 1983 claim is made against a county or municipality, the Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the county or municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). "A municipality cannot

7

be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).

Plaintiff has failed to allege, much less identify, any unlawful practice or policy of the Grayson Police Department which resulted in a deprivation of his constitutional rights. As such, he has not presented evidence as to the essential elements of this claim. Therefore, his claim against these Defendants in their official capacities, fail as a matter of law.

## V.

Lewis asserts two claims against these Defendants in their individual capacities pursuant to 42 U.S.C. § 1983, unlawful detention and malicious prosecution.

Section 1983 does not create any substantive rights; rather, it is a statutory vehicle through which plaintiffs may seek redress for violations of a right secured by the Constitution or federal laws. *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Accordingly, "[a] plaintiff's claim brought under § 1983 requires proof that: (1) the defendant was a person acting under the color of state law, and (2) the defendant deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Fridley v. Horrighs*, 291 F.3d 867, 871–72 (6th Cir. 2002), *cert. denied*, 537 U.S. 1191 (2003). Moreover, the constitutional right must be "clearly established" at the time of the violation so that "it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (internal quotation marks omitted), *cert. denied*, 537 U.S. 819 (2002).

**A.**

In order to establish a claim for unlawful detention, Lewis must present evidence that the Defendants arrested him without probable cause. *Hartman v. Moore,* 547 U.S. 250, 251 (2006). Probable cause to justify an arrest exists where there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed ... an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979).

Probable cause requires only the **probability** of criminal activity, not some type of prima facie showing. *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir.1988)(emphasis added). A police officer is subject to liability only "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue. *Malley v. Briggs,* 475 U.S. 335, 341(1986). The *Malley* Court further noted that "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost." *Id.* at 344–45 (internal citations omitted).

The record supports Defendants' argument that they had probable cause upon which to arrest Lewis for terroristic threatening and wanton endangerment. In their statements to Officer Perkins, both Michael Shane Perkins and Cody Stamper stated that the Lewis pointed his firearm directly at Cody Stamper and made threats of violence, including death, toward them. Michael Perkins and Stamper confirmed these statements in the depositions. Threatening someone with a

9

firearm falls within the statutory definition of both crimes.  Moreover, Defendants sought the advice of the County Attorney, who agreed with their probable cause assessment.

Lewis argues that his arrest was based upon false information.  However, the record does not support this argument.  In his deposition Lewis maintained that the Defendants should not have taken Stamper and Perkins "at their word" and should have investigated further.  He seems to argue that because Woodrow told Officer Perkins that Lewis had not pointed his gun at anyone, the Defendants should have discounted the other witnesses' statements.  Lewis misconstrues the probable cause calculus.  As Defendants point out, a "probable cause determination…does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demand." *Jones v. Clark Cty.*, 959 F.3d 748, 757 (6th Cir. 2020), *citing Gerstein v. Pugh*, 420 U.S. 103, 121 (1975).   Rather, the probability of criminal activity is assessed under a reasonableness standard based on "an examination of all facts and circumstances within an officer's knowledge at the time...." *Crockett v. Cumberland Coll.,* 316 F.3d 571, 580 (6th Cir.2003).  The inquiry into probable cause is forgiving. *See e.g., Seigel v. City of Germantown*, 25 F. App'x 249, 250 (6th Cir. 2001)("[A] finding of incompetent or negligent investigation…is insufficient to establish a constitutional violation."); *see also, Ahlers v. Schebil*, 188 F.3d 365, 373-74 (6th Cir. 1999)(noting an investigation's lack of thoroughness "does not demonstrate knowing or intentional behavior designed to violate [plaintiff's] constitutional rights." There is nothing in the record to suggest that the Defendants unreasonably believed one statement over another or unreasonable conducted, or failed to conduct, their investigation.  Rather, the facts, viewed in a light most favorable to Lewis, support that Defendants had probable cause upon which to seek a warrant.  That a warrant was obtained from a judge only strengthens Defendants' position.  The Court notes that, in § 1983 actions, such

as this, absent evidence of malice or blatant impropriety, officers may rely upon a judicially secured warrant as satisfactory evidence of probable cause. *See generally, Yancey v. Carroll County,* 876 F.2d 1238 (6th Cir.).

Given the existence of probable cause, Lewis' claim of unlawful detention fails as matter of law.

**B.**

Lewis also alleges malicious prosecution. An individual may be liable under § 1983 for malicious prosecution if he wrongfully institutes legal process against another individual. *Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir.2010). In order to maintain a malicious prosecution claim, a plaintiff must demonstrate that (1) the defendant participated in the decision to prosecute the plaintiff, (2) probable cause did not support the institution of legal process, (3) the plaintiff suffered a Fourth Amendment deprivation of liberty in addition to the initial seizure as a result of the institution of proceedings, and (4) the legal proceedings resulted in the plaintiff's favor. *Id.* at 308–09. Ironically, a plaintiff need not show that the person who instituted proceedings acted maliciously to make out a § 1983 malicious prosecution claim. *Id.* at 309–10.

Lewis fails to satisfy at least two of the elements of a § 1983 malicious prosecution claim. As we explained, probable cause supported the institution of proceedings against him. Additionally, Defendants did not participate in the institution of criminal proceedings against Lewis. As the 6th Circuit explained in *Sykes*, "an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials." *Id*. at 314. Defendants did no more than that.

The failure of Lewis' federal claim of malicious prosecution defeats his analogous state law claim. In Kentucky, a plaintiff alleging malicious prosecution must prove "(1) the institution of judicial proceedings, (2) by or at the insistence of the Defendant, (3) the resulting termination of such proceedings in the claimant's favor, (4) malice in the institution of such proceedings, (5) want or lack of probable cause in such proceedings, and (6) injury or damages suffered by the plaintiff as a result thereof." *Williams v. Cline*, 2012 WL 1365964, at *4 (Ky.Ct.App. Apr. 20, 2012). Defendants had probable cause to charge Lewis with terroristic threatening as well as wanton endangerment; this fact alone defeats his claim.

In his response to Defendants' dispositive motion, Lewis concludes that his claim of malicious prosecution "has been proven." [Docket No. 35, p. 13]. He explains that Defendants "simply disregarded" the statements made by Lewis, Woodrow, and Lewis' wife. *Id.* at p. 14. Yet, "disregard" is a far cry from "malice." There are simply no facts which support the latter.

In an effort to raise a specter of malice or other illegitimate motive, Lewis also asserts that he was arrested prior to the warrant being issued. In his response, he contends that (1) the arrest warrant was not signed by the Judge until 2:26 p.m., but (2) a CAD sheet notation at 1:47 p.m. "One Male 1012 to his Sig." [Docket No. 35, p. 6-7]. However, the CAD entry itself is hearsay entered by a dispatch operator who has not been deposed and has not otherwise authenticated the record. Further, Officer Ison testified that he did not effectuate the arrest until a warrant was issued. [Docket No. 36-2, 34:12-19; 35:4-10; 37:18-23]. Finally, absent from Lewis' argument is evidence of malice on the part of the Defendants. Innuendo is not enough to withstand summary judgment.

Lewis fails to create a genuine issue of material fact as to whether Defendants acted with malice in obtaining a warrant and, as such, his claims of malicious prosecution fail as a matter of law.

## VI.

Lewis also alleges abuse of process. In Kentucky, an abuse of process occurs when an individual "uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which that process is not designed." *Williams*, 2012 WL 1365964, at *3 (internal quotation and citation omitted). The elements of a Kentucky abuse of process claim are "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky.1998). A successful claim requires proof of "[s]ome definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of the process." *Id.* A claim fails if "the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions." *Id*. at 394–95.

Lewis fails to create a genuine dispute of material fact regarding Defendants' motive in seeking a criminal charge against him. Although he suggests an improper motive, the facts do not support it. He stated in discovery responses that the officers acted with "malice towards the Plaintiff due to previous interactions that the Plaintiff had with Defendant Officers Thomas Perkins, Roy Ison and Chief Kevin "Mooch" McDavid. [Plaintiff's Answer to Defendants' Interrogatories, Docket No. 34-12, No. 11]. However, when asked specifically about this allegation during his deposition, Lewis was unable to describe any such "previous interactions" with Officer Perkins. [Docket No. 34-2, 125:16-25. When asked specifically about any such "previous interactions" with former Chief McDavid, Lewis testified that "I've known him [McDavid] since I was 14 years old. So he was getting ready to retire at that point, so he really didn't care one way

13

or the other." *Id.* at 125:16-126:5. Officer Ison was asked directly during his deposition whether he had any animosity toward the Lewis, Officer Ison confirmed he did not. [Docket No. 34-3,12:19-22; 17:11-17. There is no evidence to rebut this testimony.

There is no evidence to support the contention that Defendants investigated with an improper motive or ulterior purpose. Therefore, the abuse of process claim fails.

## VII.

As for qualified immunity, there is no need for this Court to undergo the analysis. "[I]f no constitutional right would have been violated [by the officer's conduct] were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz,* 533 U.S. 194, 201 (2001). As set forth *supra*, the Plaintiff cannot show the Defendants violated any of his constitutional rights in this case.

## VIII.

The party opposing summary judgment must show that he can make good on the promise of his pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary. *Alpert v. United States,* 481 F.3d 404, 409 (6th Cir.2007). Plaintiff has not done so.

Accordingly, **IT IS HEREBY ORDERED** that Defendants, Thomas Perkins, individually and in his official capacity as officer with the Grayson Police Department, Roy Ison, individually and in his official capacity as officer with the Grayson Police Department, and Kevin "Mooch" McDavid, individually and in his official capacity as Chief with the Grayson Police Department's Motion for Summary Judgment [Docket No. 34] be **SUSTAINED**.

A judgment in favor of the Defendants will be entered contemporaneously herewith.

This 31st day of March 2022.

Signed By:
*Henry R Wilhoit Jr.*
United States District Judge